UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MONTREAL D. GREER,

                Plaintiff,

v.                                           Case No. 23-cv-1617-bhl

THOMAS J. SAMS,

                Defendant.

# DECISION AND ORDER

    Plaintiff Montreal Greer, who is representing himself, is proceeding on an Eighth Amendment claim in connection with allegations that Defendant Correctional Officer Thomas Sams was deliberately indifferent towards Greer's April 17, 2023 mental health crisis at the Waupun Correctional Institution. Dkt. Nos. 1 & 8. On October 24, 2024, CO Sams filed a motion for summary judgment. Dkt. No. 21. Because no reasonable jury could find that Greer suffered an objectively serious risk of harm on April 17, 2023, the Court will grant the motion for summary judgment and dismiss this case.

## UNDISPUTED FACTS

    At the relevant time, Greer was an inmate at the Waupun Correctional Institution, where Defendant Sams was a Correctional Officer. Dkt. No. 23, ¶¶1 & 2. The events giving rise to this lawsuit are captured on videotape through body camera footage. *See* Dkt No. 28.

    On April 17, 2023, at around 11:00 a.m., CO Sams passed out lunch bags in the Restrictive Housing Unit (RHU). Dkt. No. 23, ¶¶3-4, & 7. CO Sams gave Greer his lunch bag through the food trap then moved on to the next cell. *Id*., ¶8. A few minutes later, Greer yelled that his bag of

chips was "open." *Id*., ¶¶9 & 10. CO Sams responded, "Is it because you just opened it?" *Id*., ¶11.

In his declaration supporting his summary judgment motion, CO Sams declares under penalty of perjury that he knows the chip bag was not already opened because he checks every meal bag before delivery to ensure the quality of the food and to make sure every meal bag is exactly the same. *Id*., ¶¶ 15 & 32. He further explains that inmates in RHU often complain about their food being "bad" or "missing" in order to manipulate staff, so he makes it a point to check all meal bags before delivery to make sure the kitchen did not make a mistake. *Id*., ¶15. CO Sams also emphasizes that lunch bag mistakes regularly disrupt the meal-delivery process in the RHU, and often will disrupt the entire day in the RHU, so he checks the lunch bags to preempt any inmate complaints. *Id*. Accordingly, on the day in question, CO Sams told Greer that every lunch bag was checked and he continued passing out other lunch bags. *Id*., ¶¶14 & 17.

About ten minutes later, at around 11:08 a.m., CO Sams came back to Greer's cell to collect trash. *Id*., ¶18. Greer again complained that his bag of chips was already opened; and CO Sams again asked if he opened the bag himself. *Id*., ¶¶19-22. CO Sams told Greer that he would not get another bag of chips. *Id*., ¶23. CO Sams explains that he is not allowed to give inmates extra food unless the food is inedible, *i.e.*, it accidently spilled on the floor. *Id*., ¶26. He also explains that, if he had given Greer a second bag of chips, it would have likely caused other inmates to request additional bags of chips, which would have disrupted the entire unit. *Id*., ¶¶25 & 28. He also explains that giving an inmate favorable treatment, even one time with something as minor as an extra bag of chips, can open correctional officers to manipulation by inmates in the future. *Id*., ¶27. Greer then yelled, "How am I gonna open the bag when I'm just pulling the bag, outta, it's

2

already in the bag. It doesn't make sense." *Id.*, ¶29. CO Sams responded, "I'm not dealing with it." *Id.*, ¶30.

Greer then stated, "I'm suicidal" and "I'm gonna cut myself." *See* Dkt. No. 24-1 at 9:00-9:12. CO Sams responded, "Alright. I'll let the Sergeant know," and continued collecting trash. *Id*. Five minutes later Greer again yelled, "I'm suicidal." *Id*. at 14:35-14:36. CO Sams responded, "I know, I'll let the Sergeant know." *Id*. at 14:37-14:38. Greer then stated, "there's gonna be blood everywhere;" and CO Sams responded, "can we not put blood everywhere?" Dkt. No. 31 at 2; *see also* Dkt. No. 24-1 at 14:39-14:47.

CO Sams states that he did not believe Greer was genuinely at risk of harming himself because he reported suicidal ideation only after he was told that he would not get another bag of chips. Dkt. No. 23, ¶41. He states that he believed Greer was attempting to manipulate him to get more chips. *Id*. CO Sams states that Greer was generally calm and collected until the dispute about chips; and his statement about being suicidal came unexpectedly. *Id.*, ¶42. CO Sams explains that, in his experience, inmates who are genuinely at risk of self-harm are not suddenly or unexpectedly suicidal. *Id.*, ¶43. Instead, genuine suicidal ideation develops over a longer period of time. *Id*. CO Sams also notes that Greer was not actively engaging in self-harm nor did Greer show him any contraband that could be used to cut himself. *Id.*, ¶45. CO Sams left the unit at around 11:18 a.m. and claims he went to the Sergeant's Office to report that Greer stated he was suicidal after he refused to give him another bag of chips. *Id.*, ¶46. CO Sams had no further interactions with Greer. *Id.*, ¶¶47 & 48. Later in the day, Greer cut himself with a broken spoon. *Id.*, ¶¶49 & 50. At around 12:37 p.m., Sgt. Langridge (not a defendant) asks Greer what happened with the self-harm incident. Dkt. No. 26-1 at 2:15-2:29. Greer responds with complaints about

3

CO Sams refusing to give him chips and states, "I'm gonna keep on cutting until I get what I need." *Id*.

According to Greer, at around 12:50 p.m., Sgt. Leopold and Sgt. Cline went to his cell and told him that they had heard about his threat to self-harm about 6 minutes earlier. *See* Dkt. No. 31 at 2; *see also* Dkt. No. 23, ¶49. Greer then received medical care for his wound. *See* Dkt. No. 25-1. Medical records describe the wound as a 1.3 cm by 0.3 cm abrasion. *Id*. The abrasion was cleaned with Dermal wound cleanser and treated with a bandage. *Id*. There was no active bleeding and the abrasion did not require stitches or any other treatment. *Id*.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**ANALYSIS**

Prison officials violate the Eighth Amendment when their conduct demonstrates deliberate indifference to a substantial risk of serious harm to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To survive summary judgment on an Eighth Amendment deliberate indifference claim, Greer must establish that: "(1) the harm that befell him was objectively, sufficiently serious, and posed a substantial risk to his health or safety, and (2) the individual defendant[] [was] deliberately indifferent to the substantial risk to his health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Farmer*, 511 U.S. at 832). Genuine suicidal ideation is an objectively serious medical condition, *see Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019), and a prison official cannot ignore or fail to treat a prisoner who is genuinely suicidal, *see Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020). The risk of suicide is a grave one, "not one that today's society chooses to tolerate." *Quinn v. Wexford Health Sources, Inc.,* 8 F.4th 557, 565 (7th Cir. 2021).

"Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide [,] and (2) intentionally disregarded the risk." *Collins*, 462 F.3d 757 at 761 (citing *Matos el rel. Matos v. O'Sullivan,* 335 F.3d 553, 556 (7th Cir. 2003). The defendant must be "cognizant of the significant likelihood that an inmate may imminently seek to take his own life[.]" *Id*. (citing *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001). The evidence must show that the defendant prison

5

official "knew of a significant likelihood that the inmate would imminently attempt" self-harm or suicide then "failed to take reasonable steps to prevent it." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018). A "risk of future [self-harm] must be 'sure or very likely' to give rise to 'sufficiently imminent dangers' before an official can be liable for ignoring that risk." *Id.* (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)).

Based on CO Sam's sworn declaration, supported by the videotape evidence, no reasonable jury could conclude that Greer suffered an objectively serious risk of harm on April 17, 2023. CO Sams explains that he did not believe Greer was genuinely suicidal that day because he was calm and collected throughout the day, and he suddenly and unexpectedly said he was suicidal, after he was denied a second bag of chips. CO Sams states that, in his experience, genuinely suicidal inmates are not "suddenly" or "unexpectedly" suicidal; and that genuine suicidal ideation develops over a longer period of time. CO Sams states that he believed Greer was attempting to manipulate him to get a second bag of chips, and consistent with that belief, Greer is captured on videotape evidence telling Sgt. Langridge, "I'm gonna keep on cutting until I get what I need." Dkt. No. 26-1 at 2:15-2:29. Based on these undisputed facts, along with videotape evidence, no reasonable jury could conclude that Greer was genuinely suicidal (i.e. suffered an objectively serious risk of harm) on April 17, 2023.

In response, Greer states that CO Sams violated DOC policy by not immediately reporting Greer's words to a sergeant. Dkt. No. 31. Greer states that CO Sams showed deliberate indifference by admitting that he was "joking" when he said, "can we please not have blood everywhere?" *Id*. And he states that CO Sams purposely gave him a plastic spoon in his lunch bag (rather than the rubber spoons typically used on the RHU unit) to entice a suicidal inmate to self-harm. *Id*. None of these arguments has merit. A violation of an internal prison policy alone

6

does not violate the Constitution. *See Est. of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("Section 1983 protects against 'constitutional violations, not violations of ... departmental regulation and…practices.'"). Additionally, because no reasonable jury could find that Greer was genuinely suicidal that day, neither the violation of DOC policy nor CO Sams' "joking" about Greer's words can establish an Eighth Amendment violation. In other words, the Court need not consider a correctional officer's words and actions in connection with the *subjective* deliberate indifference analysis when there is no *objectively* serious risk of harm. Finally, with respect to Greer's claim that CO Sams purposely placed a plastic spoon in his lunch bag to entice him to self-harm, the record shows that Greer already had possession of his lunch bag *before* he told CO Sams that he was allegedly suicidal. CO Sams could not have purposely placed a plastic spoon in a suicidal inmate's lunch bag to entice self-harm because CO Sams did not know Greer was allegedly suicidal when he checked and delivered the lunch bags. To the extent CO Sams made a mistake while checking the lunch bags and accidently allowed a plastic spoon into the RHU unit, that does not establish a deliberate indifference claim. *See e.g. Williams v. Van Buren*, No. 22-2918, 2023 WL 3451407, at *2 (7th Cir. May 15, 2023) ("[N]egligence and even gross negligence do not support the subjective component of an Eighth Amendment claim.").

Finally, as this Court has previously noted, "[t]he potential for holding correctional officers liable for a sane inmate's deliberate decision to harm himself has created a perverse incentive for some litigious and manipulative inmates to engage in the very thing that allowing these claims seeks to prevent." *Shaw v. Hoffstater,* No. 23-CV-1272-BHL, 2024 WL 4751373, at *3 (E.D. Wis. Nov. 12, 2024). It is apparent from videotape evidence that this lawsuit is a product of an inmate using the threat of self-harm to manipulate prison staff to get what he wants. Greer admits as much

7

via videotape evidence. Dkt. No. 26-1 at 2:15-2:29. CO Sams is therefore entitled to summary judgment and the Court will dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 21) is **GRANTED**; and this case is **DISMISSED**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on March 14, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.